# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                            **Case No. 18-CR-163**

**RODERICK RAMSEY**
    **Defendant.**

## DECISION AND ORDER

Defendant Roderick Ramsey moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I will grant the motion, reduce the prison sentence to time served, and add a condition of supervised release requiring a period of home confinement.

### I. FACTS AND BACKGROUND

The government charged defendant and others with heroin trafficking offenses. The charges arose out of the government's investigation of the James Harris organization. Confidential sources identified defendant, Harris's nephew, as one of the organization's most prolific heroin distributers during the period of May 2017 through July 2018. During the course of the investigation, agents conducted four controlled buys from defendant, in amounts ranging from 0.55 grams to 7.8 grams. Agents also identified two residences defendant used for heroin distribution, and on the execution of a search warrant recovered two firearms from one of them.

Defendant's prior record included convictions for possession of a dangerous weapon in 2004, for which he was sentenced to 108 days jail; disorderly conduct with use of a dangerous weapon and operating a firearm while intoxicated in 2007, for which he was sentenced to a total

of 9 months in jail; forgery-uttering in 2007, for which he was sentenced to prison imposed and stayed for probation; possession with intent to deliver cocaine in 2007, for which he was sentenced to 18 months in prison; and drunk driving cases in 2011 and 2017, the former a fine/forfeiture only offense, the latter leading to a 60 day jail sentence.

On October 22, 2018, defendant pleaded guilty to conspiracy to distribute 100 grams or more of heroin and four substantive counts of heroin distribution. The pre-sentence report calculated an advisory sentencing guideline range of 60-71 months, based on an offense level of 23 and criminal history category of III. On January 14, 2019, I sentenced defendant to 60 months, the mandatory minimum on the conspiracy charge, on all counts concurrent, followed by 4 years of supervised release.

On June 11, 2020, defendant filed the instant motion for compassionate release. He is currently serving his sentence at FCI Florence, with a projected release date of November 13, 2022. The government opposes the motion, arguing that defendant has not identified extraordinary and compelling reasons for release, and that he poses a danger to the public.

## II. DISCUSSION

**A.  Compassionate Release Standards**

Pursuant to 18 U.S.C. § 3582(c)(1)(A),

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t). The Commission's policy statement provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)     (A) extraordinary and compelling reasons warrant the reduction . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

3

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Sentencing Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act of 2018, which permitted defendants to file such motions as well. In United States v. Scott, No. 17-CR-156, 2020 WL 2508894, at *8 (E.D. Wis. May 15, 2020), I adopted the majority position among the district courts that have considered the issue: in deciding a compassionate release motion, the court is no longer confined to the specific examples enumerated in the policy statement. See also United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6 (W.D. Pa. May 29, 2020) ("[A] growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement does not constrain a court's independent assessment of

4

whether extraordinary and compelling reasons warrant a sentence reduction under § 3852(c)(1)(A).") (internal quote marks omitted).

Giving the statutory terms their ordinary meaning, a defendant seeking compassionate release would need to demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, regular, or common, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. Scott, 2020 WL 2508894 at *9; see also United States v. Pinto-Thomaz, No. 18-cr-579, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020) (holding that the court may grant compassionate release motions on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in the application note).

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. See, e.g., United States v. Bartlett, No. 06-CR-273, 2020 WL 3077940, at *5 (E.D. Wis. June 9, 2020); see also U.S.S.G. § 1B1.13(2) (instructing the court to determine whether the defendant is a danger to the community).

5

### B.  Defendant's Motion

#### 1.  Exhaustion

Defendant submitted a request for compassionate release to the warden, which was denied on April 29, 2020. (R. 239-1.) And, more than 30 days have elapsed since defendant made his request. Accordingly, the statute's "exhaustion" requirement is satisfied. The issue is thus whether defendant has established "extraordinary and compelling reasons" for modification and, if so, whether the § 3553(a) factors, including the need to protect the public, nevertheless counsel against release.

#### 2.  Extraordinary and Compelling Reasons

Defendant relies on the COVID-19 pandemic and his elevated risk of severe health complications from the virus because, as indicated in his medical records, he suffers from type 2 diabetes and obesity. (R. 241 at 8-9, 241-3 at 1.) The CDC has acknowledged that persons with these conditions are at increased risk of severe illness from COVID-19.[1] Defendant also suffers from hyperlipidemia, which is associated with heart disease, another risk factor. (R. 241 at 10, 241-3 at 1.) The CDC has further noted that incarcerated persons live, work, eat, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced, and that persons in such facilities cannot engage in social distancing and other hygienic measures designed to reduce transmission.[2] Defendant acknowledges that the

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The American Diabetes Association has recommended: "Local officials should explore all possible strategies to release people with diabetes and other serious risk factors related to COVID-19, and to reduce the level of crowding in detention facilities. Medical furloughs, compassionate release, and pretrial or early release for those most

6

BOP currently reports no confirmed cases at FCI Florence,[3] but he argues that once the virus breaches the prison walls it will be too late.

In support of his request, defendant presents a letter from Barbara Benjamin, M.D., who reviewed his medical records and determined that he suffers from several chronic health conditions that could threaten his life if infected with COVID-19. Dr. Benjamin explains that type 2 diabetes causes inflammation throughout the body, which COVID-19 makes worse; that obesity is known to interfere with the ability to breathe, even with additional oxygen, making it a risk factor for death from the virus; and that defendant has relatively severe hyperlipidemia, a known pattern for heart and arterial disease. (R. 241-3 at 1.) She concludes:

> It is my medical opinion, based on review of his medical records over several years, that Mr. Ramsey has multiple risk factors that are additive putting him at high risk for death from COVID-19. Keeping him in such a prison environment where the virus spreads rapidly is a possible death sentence.
>
> Therefore, I strongly recommend that he be removed from prison and transferred to a lower risk setting while this pandemic is active.

(R. 241-3 at 1-2.)

"Courts around the country have granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Brooks, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020); see also United States v. Conner, No. CR07-4095-LTS, 2020 WL 3053368, at *7 (N.D. Iowa June 8, 2020) (collecting cases). This has included numerous cases

---

vulnerable to the virus are among options to be considered."
https://www.diabetes.org/sites/default/files/2020-03/COVID-19%20Letter%20to%20Detention%20Centers.pdf.

[3] https://www.bop.gov/coronavirus/ (last visited July 6, 2020).

7

in which the inmate suffered from diabetes and obesity. See, e.g., United States v. Williams, No. 19-cr-134-PWG, 2020 WL 3073320, at *4 (D. Md. June 10, 2020) ("Some studies have found that the top comorbidities for COVID-19 patients were hypertension, obesity, and diabetes. Therefore these circumstances weigh in favor finding 'extraordinary and compelling reasons' for a sentence modification.") (internal citations omitted); United States v. Amarrah, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (granting release to inmate with diabetes, heart disease, and asthma, despite absence of confirmed cases at his prison); United States v. Delgado, No. 3:18-cr-17-(VAB)-1, 2020 WL 2464685 (D. Conn. Apr. 30, 2020) (granting release to obese inmate); United States v. Lucas, No. 15-CR-143, 2020 WL 2059735 (W.D.N.Y. Apr. 29, 2020) (granting release to diabetic inmate); United States v. Colvin, No. 3:19cr179, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (same); United States v. Rodriguez, No. 2:03-cr-00271-AB-1, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (same).

The government argues that defendant cannot obtain compassionate release because his conditions do not fall within one of the categories listed in the Sentencing Commission's policy statement. However, I have already determined that, while the statement provides guidance, the court is not strictly limited to its examples. See Scott, 2020 WL 2508894, at *8; see also United States v. Clark, No. 4:08-CR-00096, 2020 WL 3395540, at *4 (S.D. Iowa June 17, 2020) (collecting cases).

The government further argues that the mere existence of the COVID-19 pandemic does not provide a basis for sentence reduction. I agree; the statute requires the prisoner to show that his individual case presents extraordinary and compelling circumstances. See Somerville, 2020 WL 2781585, at *7-8 (noting that courts have often denied motions based on only generalized or speculative fear about the risk of infection, granting release where the defendant

8

suffers from a serious condition that increases the likelihood of severe consequences from COVID-19). Defendant makes such an argument here, supported by medical evidence, as set forth above.

The government acknowledges that defendant suffers from conditions placing him at higher risk, but counters that those conditions are being appropriately treated by BOP medical staff. Defendant does not argue for release based on inadequate medical care. Rather, he contends that he is at heightened risk of catching COVID-19 in prison, and that he has a heightened risk of dying if he does. See Clark, 2020 WL 3395540, at *6 (finding that a similar government argument "misses the point").

Finally, the government stresses the BOP's efforts to protect inmate health and notes that defendant would also be at risk should he be released to Milwaukee (where, unlike FCI Florence, the disease has spread). No one suggests that release will eliminate the risk. Rather, it will permit defendant to mitigate that risk through the social distancing and other hygienic measures the CDC recommends, which are difficult if not impossible to follow in prison. I will also impose a condition of home confinement, which will require defendant to maintain separation.

For all of these reasons, I find that defendant has established extraordinary and compelling reasons warranting compassionate release. I thus turn to the § 3553(a) factors.

### 3. Section 3553(a) Factors

As the government notes, heroin trafficking is a serious offense, and this was not defendant's first brush with the law. However, the evidence showed that defendant personally dealt relatively small amounts, and there was no indication that he engaged in violence or threats related to the offense. Law enforcement recovered firearms from a residence, but the

9

record contained no indication that defendant used, attempted to use, or threatened to use the guns. Defendant was 32 years old at the time of the original sentencing, and his only contacts after the age of 20 were two drunk driving offenses; he committed his more serious prior offenses between the ages of 17 and 20. The original sentence was the lowest permitted by law.

Reducing the sentence to time serve will still result in a longer term than defendant had previously served, producing sufficient deterrence. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Finally, defendant appears to have a solid release plan, proposing to live with his long-term girlfriend and their two children. He further indicates that he will work with Project 180, a center for self-sufficiency designed to improve employment outcomes and lower rates of recidivism.

The government argues that continued detention is needed to protect the public, but aside from noting the nature of the instant offense and listing his prior record it does not further develop the argument. The government does not dispute that the instant offense was a non-violent one, nor does it explain how his remote criminal history reflects a current significant threat. I conclude that the § 3553(a) factors and the need to protect the public do not require denial of the motion. I will impose a period of home confinement as condition of supervised

10

release to ensure sufficient protection of the public and deterrence.[4]

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 239) is granted. The prison sentence is reduced to time served, and his conditions of supervised release are modified to include a condition that he comply with the terms of home confinement for a period not to exceed 365 consecutive days utilizing radio frequency (RF) monitoring. During this time, the defendant will remain at his place of residence except for employment and other activities approved in advance by the probation officer. All other terms and conditions of the original sentence will remain as previously fixed. An amended judgment shall issue consistent with this decision.

Dated at Milwaukee, Wisconsin, this 7th day of July, 2020.

s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[4]The government notes that the court has no authority to order defendant serve his sentence in home confinement. As the government acknowledges, however, the court can order a home confinement condition of supervised release.

11